IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>BCP CONSTRUCTION OF HAWAII, INC., *et al.*,<br><br>Defendants. | Case No. 19-cv-00140-DKW-WRP<br><br>**ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## **INTRODUCTION**

Plaintiff Travelers Casualty and Surety Company of America ("Travelers") moves for summary judgment on two of its claims on the basis that Defendants have breached a contract between the parties and damages have ensued. Travelers seeks both damages it has already suffered and damages it anticipates suffering due to Defendants' conduct. In no small part due to Defendants not responding to Travelers' motion, the facts are undisputed, and those facts show that the parties' contract has been breached, and Travelers has suffered damages. However, because the Court has questions regarding the damages Travelers anticipates suffering, the motion for partial summary judgment is GRANTED IN PART without prejudice pending clarification of Travelers' anticipated damages.

## PROCEDURAL BACKGROUND

Travelers initiated this action with the filing of a Complaint on March 18, 2019 against BCP Construction of Hawaii, Inc. ("BCP"), Legacy One Development, LLC, Close Family Trust, Robert N. Close, and Betty Close (collectively, "Defendants"). Dkt. No. 1. In the Complaint, Travelers asserts five claims for relief, two of which are the subject of the pending motion for partial summary judgment: Claim One – Breach of Contract – and Claim Five – Specific Performance. Essentially, Travelers alleges a breach of contract by Defendants and seeks, *inter alia*, damages and specific performance of the contract.

On April 12, 2019, Defendants appeared in this action by answering the Complaint. Dkt. No. 15. On July 8, 2019, the parties appeared before the assigned Magistrate Judge for a settlement conference that did not result in a resolution. Dkt. No. 44.

On October 16, 2019, Travelers filed the instant motion for partial summary judgment ("the motion"), along with a concise statement of facts and accompanying exhibits. Dkt. Nos. 48-49. The motion was scheduled for a hearing on December 2, 2019, meaning that, pursuant to Local Rule 7.2, an opposition was due three weeks before that date. No opposition to the motion was

(or has been) filed. On November 18, 2019, Travelers filed a brief reply, and the Court subsequently vacated the December 2, 2019 hearing. Dkt. Nos. 55-56.

## FACTUAL BACKGROUND

BCP is a contractor licensed to conduct business in the State of Hawaiʻi. Concise Statement of Facts ("CSF") at ¶ 1, Dkt. No. 49. Robert Close and Betty Close, both individually and as trustees of the Close Family Trust, and BCP entered into a General Agreement of Indemnity ("GAI") with Travelers dated May 20, 2013. *Id*. at ¶ 2. On December 12, 2014, Legacy One Development, LLC was added as an indemnitor under the GAI. *Id*. at ¶ 3. Pursuant to the GAI, Defendants agreed to (1) indemnify Travelers against all "Loss" and (2) deposit, upon demand, an amount determined by Travelers to be sufficient to discharge any "Loss" or anticipated "Loss." GAI at ¶¶ 3, 5, Dkt. No. 48-4. The GAI defines "Loss" as "[a]ll loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or [the GAI]…." *Id*. at ¶ 1.

After execution of the GAI, BCP entered into a contract with the State of Hawaiʻi Department of Accounting and General Services ("DAGS") for BCP to upgrade the security electronics at the Halawa Correctional Facility ("the Halawa Project"). CSF at ¶¶ 6, 9. In connection therewith, Travelers issued bonds for

BCP's work on the Halawa Project ("the Halawa Bonds"). Decl. of Paul Harmon at ¶ 10, Dkt. No. 48-3; 12/15/15 Performance Bond, Dkt. No. 48-5 at 7; 12/15/15 Labor and Material Payment Bond, Dkt. No. 48-5 at 9. Travelers also issued numerous other bonds on behalf of BCP. Harmon Decl. at ¶ 10.

A notice to proceed on the Halawa Project was issued on February 16, 2016. CSF at ¶ 8. Most of the work for the Halawa Project was to be completed by two BCP subcontractors: Sierra Detention Systems ("SDS") with respect to hardware supply and programming; and Hawaiya Technologies, Inc. ("HTI") as the electrician. *Id*. at ¶ 9. The Halawa Project was scheduled for completion on September 7, 2017, but this date was subsequently extended to August 31, 2018. *Id*. at ¶ 8. Construction was complicated due to the Halawa Correctional Facility ("HCF") being fully occupied with inmates in four cell modules at the time of the work. *Id*. at ¶ 11. To accommodate construction activities, 248 inmates were temporarily sent from HCF to a private prison in Arizona. *Id*. at ¶ 12. Due to the high cost of re-housing inmates, a penalty clause was included in the contract between DAGS and BCP, charging BCP $16,829.00 per day for every day the Halawa Project was late. *Id*. at ¶ 13.

At various points during the Halawa Project, SDS went out of business, and HTI was terminated after installing defective electrical work. *Id*. at ¶ 14. As a

result of these and other issues, the Halawa Project was delayed by over two years, with DAGS alleging that it had incurred over $7.2 million in delay damages. *Id*. at ¶ 16.

On approximately February 15, 2019, Travelers received a payment bond claim from one of BCP's subcontractors, CML RW Security, LLC ("CML"), which had been hired to complete SDS' remaining work. *Id*. at ¶ 17. Travelers paid CML's claim in the amount of $315,353.89, after being informed by BCP that, although the claim was valid, BCP did not have the money to pay it. *Id*. at ¶ 19. BCP subsequently failed to pay other subcontractors and suppliers, resulting in additional claims being made against the bonds Travelers had issued. *Id*. at ¶ 20. After conducting its own investigations, Travelers paid the claims it determined were valid, but has not been reimbursed by Defendants under the GAI. *Id*. at ¶ 21.

On February 14, 2019, Travelers made a formal written demand to Defendants to deposit cash or other property in the amount of $7.6 million to indemnify Travelers from the losses potentially resulting from the claims made against the Halawa Bonds. *Id*. at ¶ 22. Defendants did not comply with this demand. *Id*. at ¶ 23.

On or about April 10, 2019, DAGS provided formal written notice to BCP that it was in default on the Halawa Project, after Robert Close sent an email to DAGS indicating that BCP would "demobilize" with respect to the Halawa Project. 4/10/19 Letter from Curt Otaguro to Robert Close and BCP, Dkt. No. 48-9. At about the same time, BCP voluntarily defaulted on all other bonded projects, with demands made upon Travelers to complete the relevant projects. CSF at ¶ 25. Subsequently, BCP went out of business. *Id*. at ¶ 26.

As of May 9, 2019, Travelers entered into a Takeover Agreement with DAGS, pursuant to which, *inter alia*, Travelers agreed to (1) complete the remaining work on the Halawa Project, and (2) pay DAGS $2.5 million for claims related to inmate re-housing and liquidated damages. *Id*. at ¶ 27; 5/9/19 Takeover Agreement, Dkt. No. 48-10. In connection therewith, Travelers hired Kitsap Construction ("Kitsap") to replace BCP as the contractor on the Halawa Project, CML to finish SDS' work, and Rhema Electric ("Rhema") to finish HTI's work. CSF at ¶ 28. As a result, the Halawa Project is expected to be completed by February 13, 2020. *Id*. at ¶ 29.

As of September 17, 2019, Travelers has paid claims, net of recoveries, in the amount of $3,362,410.96. *Id*. at ¶ 30. The breakdown of Travelers' paid claims is as follows:

| EXPENSE | AMOUNT |
|---|---|
| Payment to DAGS under Takeover Agreement | $2,500,000.00 |
| Costs to complete Halawa Project | $3,216,931.39 |
| Payment bond claims | $612,415.10 |
| Attorneys' fees | $231,320.96 |
| Engineering/consultant fees | $152,509.55 |
| Miscellaneous | $9,869.45 |
| Accounting | $9,789.14 |
| Travel expenses | $12,088.97 |
| **Subtotal** | **$6,744,924.56** |
| Contract balances | ($2,752,229.00) |
| Settlement funds regarding HTI | ($630,284.60) |
| **Total** | **$3,362,410.96** |

Harmon Decl. ¶ 35 ("Table One"). As of the same date, Travelers anticipates spending another $5,460,745.00 to satisfy its obligations as BCP's surety. *Id.* at 31. The breakdown of Travelers' anticipated spending is as follows:

| EXPENSE | AMOUNT |
|---|---|
| Kitsap's work | $848,350.00 |
| CML's work as HTI's completion contractor | $1,101,000.00 |
| CML's work as SDS' completion contractor | $255,750.00 |
| Rhema's work | $1,365,000.00 |
| CML's two-year maintenance and warranty | $395,000.00 |
| Other potential completion costs | $684,549.00 |
| Close-out costs | $16,500.00 |
| Contingency | $955,844.00 |
| Contingency on non-Halawa Projects | $25,000.00 |
| Engineering/consultant fees | $500,000.00 |
| Attorneys' fees | $760,000.00 |
| **Subtotal** | **$6,906,993.00** |
| Remaining contract balance | ($1,457,588.00) |
| Additional liquidated damages | $11,340.00 |
| **Total** | **$5,460,745.00** |

Harmon Decl. at ¶ 36 ("Table Two").

Travelers asserts that it will return any collateral posted by Defendants that is not used. CSF at ¶ 32.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the moving party bears the burden of proof, he "must come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Here, this means that Travelers "must establish beyond controversy every essential element" of its claims. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted). In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## DISCUSSION

In light of the uncontroverted nature of the facts and evidence presented by Travelers, the resolution of liability and (some of the) damages in this case is straightforward. Notably, Travelers has presented evidence of (1) the contract at

issue – the GAI, (2) the parties to the contract – Travelers and Defendants, (3) Travelers performance under the GAI by, for example, issuing bonds, (4) the provisions of the GAI at issue – the provisions concerning indemnification (Section 3 of the GAI) and collateral (Section 5 of the GAI), (5) when Defendants breached the foregoing provisions of the GAI – at various points after February 14, 2019, and (6) how Defendants breached the foregoing provisions by failing to indemnify or provide collateral to Travelers. *See Honold v. Deutsche Bank. Nat'l Trust Co.*, 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010) (setting forth the elements of a breach-of-contract claim in Hawaiʻi).[1]  Accordingly, the Court finds

---

[1]The Court notes that, although Travelers' motion sets forth the elements of a breach-of-contract claim in Hawaiʻi, Travelers spends no time explaining why Hawaiʻi law applies here.  This is notable because, based upon the Court's review of the GAI, there is no governing law provision set forth therein.  As such, a "choice of law" analysis is appropriate.  *See, e.g.*, *Birnstill v. Home Sav. Of Am.*, 907 F.2d 795, 797 (8th Cir. 1990); *Johnson-Loudermilk v. Playcore Wis., Inc.*, 2009 WL 10696478, at *3 (Sep. 1, 2009 D. Nev.).  Where, as here, the Complaint alleges that this Court's jurisdiction is premised upon diversity, *see* Compl. at ¶ 1, the choice-of-law rules of the forum state – Hawaii – apply, *see Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987).  In Hawaiʻi, courts apply a "flexible approach looking to the state with the most significant relationship to the parties and subject matter."  *Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 741 (Haw. 2007) (quotation omitted).  Here, Hawaiʻi undoubtedly has the closest connection to the subject matter of the case, given that the alleged construction projects took place (and, allegedly, are still taking place) in Hawaiʻi, and the GAI reflects that Defendants executed it in Hawaiʻi.  *See* GAI at 3-5, Dkt. No. 48-4.  In addition, although Travelers alleges it is not incorporated and does not have its principal place of business in Hawaiʻi, the Complaint alleges that BCP and Legacy One Development, LLC are incorporated and have their principal places of business in this State.  Compl. at ¶¶ 3-7.  Moreover, Travelers provided the bonds at issue in this case for BCP's work in Hawaiʻi.  12/15/15 Performance Bond, Dkt. No. 48-6 at 1; 12/15/15 Labor and Material Payment Bond, Dkt. No. 48-6 at 3.  As a result, the Court finds that Hawaii law applies to the substantive claims in this case.

9

that Travelers is entitled to summary judgment with respect to its breach of contract claim (Claim One).

As for the other claim for which Travelers seeks summary judgment – specific performance, any such request at the *liability* stage of this case is unnecessary, given that specific performance is a *remedy* rather than an independent claim for relief. *Cf. Lee v. Aiu*, 936 P.2d 655, 667 (Haw. 1997) (reinstating a jury's finding of a breach of a settlement agreement and concluding that the "appropriate remedy" was specific enforcement, rather than monetary damages). As such, having established that Defendants are *liable* for breach of contract, the only remaining question is whether Travelers is entitled to the *remedy* of specific performance for Defendants' conduct, in addition to the monetary damages Travelers seeks.[2]

First, based upon the undisputed facts and evidence presented, Travelers has shown that it has already suffered $3,362,410.96 worth of damages due to Defendants' failure to abide by the terms of the GAI. *See* Table One. Because damages are an adequate remedy to correct Defendants' contractual breaches in

---

[2]Travelers' discussion of specific performance in its memorandum reflects as much. Notably, rather than discussing the elements for establishing a specific performance claim, Travelers instead argues that it can only be "made whole" by obtaining specific performance. *See* Dkt. No. 48-1 at 17-19.

this regard, the Court finds that Travelers is entitled to $3,362,410.96 in monetary damages. *See Scotella v. Osgood*, 659 P.2d 73, 76 n.4 (Haw. Ct. App. 1983) (noting that "[t]he remedy of specific performance of contracts is given as a substitute for the legal remedy of damages, or monetary compensation, whenever the legal remedy is inadequate or impracticable.") (quotation omitted).

Second, Travelers asserts that it is entitled to the remedy of specific performance of the GAI in the sense that Defendants must comply with the provision of the same requiring the deposit of an amount to cover, *inter alia*, any anticipated loss. The Court agrees that the GAI requires a deposit to cover anticipated losses. *See* GAI § 5. The Court also agrees that, in theory, Travelers is entitled to the remedy of specific performance to enforce Section 5 of the GAI. *See Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses. If a creditor is to have the security provision for which he bargained, the promise to maintain the security must be specifically enforced.") (quotation omitted); *Ins. Co. of the W. v. Kuenzi Commc'ns, LLC*, 2009 WL 2731349, at *3-4 (D.Or. Aug. 26, 2009) (finding that, because the plaintiff had received demands for payment under certain bonds and the indemnitors had refused to comply with demands to post

collateral security, the plaintiff was entitled to specific performance of the parties' indemnity agreement).

Nonetheless, having reviewed Table Two, the Court has questions about certain line items therein. First, in Table Two, Travelers anticipates losses related to payments it may make to various contractors and/or subcontractors in order to complete the Halawa Project. *See* Table Two at lines 1-4. In Table One, however, Travelers states that it has already incurred over $3 million worth of damages to complete the Halawa Project. *See* Table One at line 2. Because the Court has not been provided a basis to determine whether the anticipated losses in Table Two constitute "double counting" of damages contained in Table One, Travelers must explain how the anticipated losses identified above are different from the "[c]osts to complete Halawa Project" in Table One. Second, the evidence presented reflects that CML was "hired to complete SDS's remaining scope of work on the Halawa Project…." CSF at ¶ 17. The evidence does not reflect that CML was hired to complete any other work. That notwithstanding, in Table Two, Travelers anticipates losses related to CML completing not only SDS' work, but also HTI's work. *See* Table Two at lines 2-3. Because the evidence does not reflect that CML is completing HTI's work, Travelers must explain this

12

item in Table Two *and* provide evidence to support it.[3]  Third, in Table Two, Travelers anticipates losses related to "[o]ther" potential completion costs.  *See id.* at line 6.  The evidence reflects that "most of the work" for the Halawa Project concerned SDS and HTI's tasks.  CSF at ¶ 9.  Given that Table Two already incorporates the anticipated costs of that work, as well as the cost to pay a new completion contractor, the Court has no real understanding of what other potential completion costs there may be, particularly such costs of the magnitude set forth in Table Two.  Therefore, Travelers should explain this line item.[4]  Fourth, in Table Two, Travelers anticipates losses related to contingencies for "non-Halawa projects."  Table Two at line 9.  While the evidence may reflect that Travelers has issued bonds for BCP related to projects other than the Halawa Project and demands were made on Travelers to complete the same, *see* Harmon Decl. at ¶¶ 10, 30, not one of those other projects is otherwise discussed anywhere else in the evidence or arguments put forth by Travelers.  As such, the Court has no basis to know whether such a contingency is properly recoverable here.  Once again,

---

[3]The Court notes that, to the extent CML actually is completing HTI's work, Travelers must explain how that work differs from that of Rhema, who, the evidence reflects, was hired to complete HTI's work.  *See* CSF at ¶ 28.

[4]The foregoing concern is particularly noticeable given the large amount of anticipated costs placed in the "[c]ontingency" line item.  *See* Table Two at line 8.  In other words, "[o]ther potential completion costs" could be read as a synonym for contingency and, were that so, would be duplicative.

13

Travelers should elaborate.[5] Fifth, in Table Two, Travelers anticipates $500,000.00 in "[e]ngineering/consultant" fees. Table Two at line 10. As mentioned, the evidence reflects that "most of the work" for the Halawa Project is to be completed by two subcontractors, now CML and Rhema. It is, thus, far from clear why the use of consultants is anticipated, particularly at this stage of the project only months from completion, or, given that the Halawa Project concerns "upgrading the security electronics for a medium security prison," *see* CSF at ¶ 9, why engineering is anticipated beyond any engineering that CML or Rhema may perform. Therefore, Travelers must explain this line item. Finally, in Table Two, Travelers anticipates $760,000.00 in attorneys' fees. Table Two at line 11. This is noticeable for the *amount* of the anticipated attorneys' fees, in light of the attorneys' fees that Travelers has already incurred. Notably, in Table One, Travelers asserts it has incurred $231,320.96 in attorneys' fees. Table One at line 4. In other words, for all of the disputes to which Travelers has been subjected so far due to Defendants' conduct, including reaching a settlement with DAGS,

---

[5]The inclusion of this line item is notable not just because non-Halawa Projects are hardly mentioned in the record. Perhaps more notably, the contingency anticipated for all non-Halawa Projects is merely $25,000.00. Based upon the evidence in the record, there are potentially 12 non-Halawa Projects. *See* Harmon Decl. at ¶ 10. By contrast, the anticipated contingency for the singular Halawa Project is approximately 40 times *larger*. In addition, it is at least odd for there to be an anticipated need for a contingency, when *no other* costs are anticipated for the other projects. In this light, the inclusion of the contingency for non-Halawa Projects appears to either be an error or sheds a peculiar light on the amount of the Halawa Project contingency.

finding new contractors, and prosecuting this lawsuit, Travelers has incurred roughly $231,000.00. Yet, Travelers anticipates incurring roughly *three times* that amount in future attorneys' fees – for precisely what is unclear. Travelers must explain.

For the foregoing reasons, although the Court finds that Travelers is entitled to the monetary damages it seeks, the Court is not prepared to find that Travelers is entitled to the specific performance it seeks – at least, not yet. The Court affords Travelers an opportunity to clarify the specific performance it seeks. Specifically, Travelers may have until January 10, 2020 to address the inquiries set forth above. Additionally, by the same deadline, Travelers is instructed to submit to the Court's orders inbox–by way of a separate filing–a proposed judgment for the Court's review detailing, *inter alia*, the relief to which it claims entitlement, including any proposed relief with respect to specific performance.

//

//

//

## CONCLUSION

For the reasons set forth herein, the motion for partial summary judgment, Dkt. No. 48, is GRANTED IN PART. Travelers is ordered to respond to this Order as instructed herein.

IT IS SO ORDERED.

DATED: December 10, 2019 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Travelers Casualty and Surety Company of America v. BCP Construction of Hawaii, Inc., et al*; Civil No. 19-00140 DKW-WRP; **ORDER GRANTING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT**